IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRUCE WRIGHT,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**YM VENTURES NJ LLC**, a New Jersey company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Bruce Wright ("Plaintiff" or "Wright") brings this Class Action Complaint and Demand for Jury Trial against Defendant YM Ventures NJ LLC ("Defendant" or "YM Ventures") to stop the Defendant from violating the Telephone Consumer Protection Act by making pre-recorded telemarketing calls to consumers without consent. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Wright, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### PARTIES

1. Plaintiff Bruce Wright is a resident of Point Roberts, Washington.

2. Defendant YM Ventures is a limited liability company headquartered in Holmdel, New Jersey. Defendant YM Ventures conducts business throughout this District and the US.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant and the venue is proper under 28 U.S.C. § 1391(b) because the Defendant resides in this District.

## INTRODUCTION

5. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6. When Congress enacted the TCPA in 1991, it found that Americans were receiving more than 18 million robocalls every day. 105 Stat. 2394 at § 2(3).

7. By 2003, due to more powerful autodialing technology, Americans were receiving more than 100 million robocalls every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

8. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

9. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

10. According to online robocall tracking service "YouMail," 4.4 billion robocalls were placed in March 2022 alone, at a rate of 140.8 million calls per day. www.robocallindex.com (last visited April 4, 2022).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Defendant YM Ventures is a financial services company which provides loans and financing options to businesses.

15. Defendant YM Ventures sends telemarketing text messages and places cold calls to prospective consumers to solicit their financial services to the consumers.

16. Defendant YM Ventures places cold calls to consumers using pre-recorded voice message calls, despite having never obtained the necessary consent required to place the calls.

17. Defendant YM Ventures uses an unregistered alias, Go Business Grants, to send solicitation calls and text messages to consumers, like they sent to Plaintiff Wright's cell phone.

---

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

18. For example, in Plaintiff Wright's case, the Defendants placed multiple pre-recorded voicemails to Wright's cell phone even though Wright never consented to receive such calls.

19. There are multiple complaints posted online about unsolicited telemarketing calls consumers received from or on behalf of Defendant YM Ventures using the alias Go Business Grants, including calls from 732-355-3293, the same phone number from which Plaintiff Wright was called, using pre-recorded voicemail identical to the one received by Plaintiff Wright, for instance:



---

[3] https://directory.youmail.com/directory/phone/7323553292

-  4

- 5

20. In response to these calls, Plaintiff Wright files this lawsuit seeking injunctive relief requiring the Defendant to cease from violating the Telephone Consumer Protection Act, as well as an award of statutory damages to the members of the Class and costs.

## PLAINTIFF WRIGHT'S ALLEGATIONS

21. Plaintiff Wright is the subscriber of the cell phone number ending xxx-xxx-4584.

22. In March 2022, Plaintiff started receiving unsolicited calls and text messages to his cell phone soliciting business loans from the Defendant using the alias Go Business Grants.

23. Plaintiff received multiple solicitation text messages and calls on his cell phone from the Defendant offering business loans, for instance:

---

[4] *Id.*
[5]



24. On March 2, 2022, at 7:29 PM, Plaintiff received a call from Defendant YM Ventures using the phone number 732-355-3292. Plaintiff did not answer the call and received a pre-recorded voicemail to his cell phone soliciting Defendant's financial services to the Plaintiff, which says:

> "Hi, this is Sam from Go Business Grants. I am trying to reach you, to let you know that the SPA raised the limits on their EIDL Pandemic Loans to two million dollars. We've been working on reconsiderations for many businesses like yours to try to get the maximum amount. I would like to speak to you if you can give me a call back at 1-888-883-7703. Thank you"

25. On March 31, 2022, at 10:20 AM, Plaintiff received another call from the Defendant to his cell phone which he did not answer. Defendant left am identical pre-recorded voicemail message to the Plaintiff's cell phone as the one Defendant sent to him on March 2, 2022, and says:

> "Hi, this is Sam from Go Business Grants. I am trying to reach you, to let you know that the SPA raised the limits on their EIDL Pandemic Loans to two million dollars. We've been working on reconsiderations for many businesses like yours to try to get the maximum amount. I would like to speak to you if you can give me a call back at 1-888-883-7703. Thank you"

26. On calling this phone number, 732-355-3292, one reaches Defendant YM Ventures.

27. Plaintiff's attorneys sent text messages to 732-355-3292, the phone number from which Defendant called the Plaintiff, and received a response from Defendant's employee Jack Mario using the phone number 732-388-2488. Upon inquiry, Jack identified their company as Defendant YM Ventures, and identified "Go Business Grants" as Defendant YM Venture's sister concern company.



28. The unauthorized solicitation telephone calls and text messages that Plaintiff received from Defendant have harmed Plaintiff Wright in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery), the consumption of memory on the phone.

29. The unsolicited calls that Plaintiff received also caused his great anxiety and concern that the calls will continue.

30. Seeking redress for these injuries, Plaintiff Wright, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

31. Plaintiff Wright brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant YM Ventures called (2) on their cellular telephone number (3) using the same or a similar artificial or pre-recorded voice messages used to call Plaintiff.

32. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Wright anticipates the need to amend the Class definition following appropriate discovery.

33. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

34. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) Whether Defendant made calls using a prerecorded voice;

(b) whether Defendant made these calls without consent;

(c) whether the calls violate the TCPA;

(d) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

35. **Adequate Representation**: Plaintiff Wright will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Wright has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Wright and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Wright nor his counsel have any interest adverse to the Class.

36. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff Wright. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

<u>**COUNT I**</u>
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Wright and the Pre-recorded No Consent Class)**

37. Plaintiff Wright repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

38. Defendant YM Ventures and/or its agents transmitted unwanted telephone calls to Plaintiff Wright and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

39. These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff Wright and the other members of the Pre-recorded No Consent Class.

40. The Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Wright and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Wright requests a jury trial.

**BRUCE WRIGHT**, individually and on behalf of all others similarly situated,

DATED this 26th day of April, 2022.

By: /s/ Stefan Coleman
Stefan Coleman
law@stefancoleman.com
LAW OFFICES OF STEFAN COLEMAN
1072 Madison Ave, Suite 1
Lakewood, NJ 08701
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*